**NOT FOR PUBLICATION**                                                                    **CLOSED**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALWA JAAFAR, | : |
| Plaintiff, | : |
| | : Civil Action No. 09-2903 |
| v. | : |
| | : **OPINION & ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : |
| | : Dated: July 28, 2010 |
| Defendant. | : |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Plaintiff Salwa Jaafar's motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

**I. BACKGROUND**

**A.     Plaintiff's Medical And Vocational History**

Plaintiff is a 44-year-old woman who moved to the United States from Egypt in 1986. (Tr. 32.) She has never worked outside the home. (Tr. 35.) Plaintiff applied for Supplemental Security Income on July 26, 2006 after she and her husband separated. (Tr. 87.)

She alleges that she has been disabled since January 1, 2004 due to diabetes, glaucoma,

1

high cholesterol, a concussion, a meniscal tear, muscle spasms, lumbar radiculopathy and depression.  (Tr. 89; 122.)

In her application for benefits, Plaintiff claimed that her typical activities and responsibilities include cleaning, cooking, grocery shopping, looking after her three children, talking on the phone with friends, watching television, and trips to a mosque for weekly prayer.  (Tr. 99-102.)  Plaintiff specified that she spends roughly five hours every other day doing house work, generally assisted by her daughter.  (Tr. 100.)  Plaintiff stated that, because of her condition, she requires help with household chores and that lifting, squatting, bending, standing for long periods, reaching, and walking were all "extremely painful and almost non-existent."  (Tr. 126.)

According to a letter written by Dr. Al-Salihi, Plaintiff's primary care physician, dated August 17, 2006, Plaintiff had been suffering from lumbosacral vertebral disc disease and poorly controlled diabetes mellitus for the previous ten years, glaucoma for the previous five years and had severe arthritis of the left knee that required surgical care.  (Tr. 135.)  Dr. Al-Salihi did not provide any radiological imaging in support of the lumbosacral vertebral disc disease or arthritis diagnoses.  In Dr. Al-Salihi's opinion, these conditions rendered Plaintiff totally disabled and prevented her from engaging in any gainful employment.  (Tr. 136.)  A report from Dr. Al-Salihi dated October 25, 2006 indicated that Plaintiff needed to lie down periodically throughout the day and that she could only sit, stand, or walk continuously and for a total of one hour in an eight-hour workday.  (Tr. 169.)  Dr. Al-Salihi also indicated that Plaintiff should only lift up to five pounds occasionally and that she should never bend, squat, climb or reach.  (Tr. 169.)  In Dr. Salihi's opinion, Plaintiff could use her hands for simple grasping and fine manipulation but not

for pushing and pulling of arm controls, nor could she use her legs and feet in pushing and pulling of leg or foot controls. (Tr. 170.)

Initial X-rays of Plaintiff's lumbar spine taken on September 11, 2006 revealed mild facet arthropathy at L5-S1, however there were no aggressive-appearing lytic or blastic lesions. (Tr. 139.) Additionally, no evidence of spondylolysis or spondylolisthesis was found. (Tr. 139.) An MRI of Plaintiff's lumbar spine taken on January 26, 2007 revealed a very slight retrolisthesis at L5 on S1. (Tr. 215.) No evidence of intradural or extradural mass was found. (Tr. 215.) L1-L2 through L3-L4 disc spaces were normal. (Tr. 215.) Mild disc degeneration associated with a minimal disc herniation extending into the neural foramen, abutting the exiting portion of the nerve root, and causing slight narrowing of the left neural foramen was found at L4-L5. (Tr. 215.) Additionally, mild segmental spinal canal stenosis was found at this level. (Tr. 215.) At L5-S1, the MRI revealed a slight retrolisthesis, mild disc degeneration and minimal central subligamentous disc herniation that did not encroach on the nerve roots. (Tr. 215.) In sum, Dr. Howard Hirsch, the radiologist, concluded that Plaintiff suffered from lower lumbar disc degeneration with minimal herniations. (Tr. 216.)

Dr. Elamir reported that Plaintiff suffered from lumbar radiculopathy on March 21, 2007. (Tr. 159.) Dr. Elamir also reported that "regular and continuous" work would cause Plaintiff's condition to deteriorate. (Tr. 161.) Dr. Elamir opined that the amount of sitting, standing, walking, or carrying she could do in an 8-hour work day was severely limited. (Tr. 161-162.)

An MRI of Plaintiff's left knee taken on March 15, 2007 revealed mild prepatellar soft tissue swelling, and a tear at the posterior horn of the medial meniscus indicating mucoid degeneration. (Tr. 217.) There was no evidence of fracture, subluxation or bone contusion. Id.

3

The anterior and posterior cruciate ligaments were intact and the collateral ligaments, patellar retinacula, quadriceps and patellar tendons all appeared normal.  Id.

Dr. Jacqueline Gabay completed a report evaluating Plaintiff's glaucoma on October 23, 2006.  (Tr. 173.)  Plaintiff's primary symptom was blurry vision, which was made worse by "too much straining of her vision."  (Tr. 174-175.)  Dr. Gabay also noted that blurry vision was a side effect of her glaucoma medication.  (Tr. 175.)  Given Plaintiff's condition, Dr. Gabay concluded that there was no limitation on the length of time she could sit, nor was there any limitation on the use of her hands or feet.  (Tr. 176-177.)  However, Dr. Gabay did conclude that Plaintiff could stand or walk continuously "with limitation" in an eight-hour work day.  (Tr. 176.)  Plaintiff also faced other mild to moderate limitations in the workplace.  (Tr. 178.)

A second report by Dr. Gabay completed on February 22, 2007 indicated that Plaintiff's visual acuity was measured at 20/40 in the right eye and 20/30 in the left eye.  (Tr. 141.)  While Dr. Gabay was unable to comment on Plaintiff's ability to lift, carry, stand or walk, she again concluded that, with respect to vision, there was no limitation on Plaintiff's ability to push or pull hand or foot levers and no limitation on Plaintiff's ability to handle objects, hear, speak or travel.  (Tr. 142.)

On October 24, 2006 Dr. Vinod Lala reported that Plaintiff suffered from Type II diabetes mellitus, high cholesterol, obesity, high cardio c-reactive protein and rheumatoid arthritis. (Tr. 180.)  Dr. Lala noted that Plaintiff's condition was lifelong, chronic and progressive. (Tr. 182.)  The report recommended that Plaintiff only lift or carry up to five pounds occasionally during an eight-hour workday, but specified that there was "no limitation" on Plaintiff's ability to sit, stand, walk, bend, squat, climb or reach.  (Tr. 183.)  Dr. Lala also indicated that while Plaintiff's

condition did not prevent use of the feet or left hand, a mix of injuries to the right hand and arm prevented pushing and pulling of arm controls, simple grasping and fine manipulation with the right hand. (Tr. 184.)  The report also indicated that it was "too early to tell" whether Plaintiff's condition was permanent. (Tr. 186.)

On September 18, 2006, Dr. Saltas conducted a physical examination at the request of the Social Security Administration. (Tr. 137.)  Dr. Saltas noted that Plaintiff suffered from Type II diabetes, bilateral glaucoma, multiple traumas to the shoulder and arm as a result of domestic violence, and a herniated disc diagnosed by her private medical doctor despite the lack of radiological testing. (Tr. 137.)  Dr. Saltas' report indicated that visual acquity was 20/40 in the right eye and 20/50 in the left eye and found decreased sensation from the knee down in Plaintiff's left leg. (Tr. 138.)  The leg raise test caused sacral pain at 90 degrees on the right side and knee and calf pain at 60 degrees on the left side. (Tr. 138.)  Power measured at 5 out of 5 in all extremities. (Tr. 138.)  The right shoulder's range of motion was limited to 90 degrees due to pain, although there was no swelling or erythema. (Tr. 138.)  Range of motion was within normal limits in all other extremities. (Tr. 138.)  Hand grip and gait were also within normal limits. (Tr.  138.)  An X-ray confirmed facet arthropathy at L5-S1. (Tr. 138.)  Dr. Saltas concluded that Plaintiff suffered from tingling, numbness and decreased sensation in the left leg caused by Type II diabetes, but otherwise the examination was "completely unremarkable." (Tr. 138.)

On March 26, 2007, Plaintiff underwent an eye examination by Dr. Bernard Shaw also at the request of the Social Security Administration.  (Tr. 207.)  Dr. Shaw concluded that Plaintiff's visual fields were essentially normal, and with correctable vision of 20/30 in each eye, Plaintiff

5

was not visually impaired. (Tr. 207.)

On April 10, 2007, Plaintiff underwent a third examination at the Social Security Administration's request. During the examination, Plaintiff was unable to walk on her heels or toes or squat due to pain. (Tr. 211.) However, Plaintiff's strength in the lower and upper extremities measured at five out of five and sensation was intact to light touch. (Tr. 211.) Plaintiff's range of motion was "mildly diminished" in the lumbar region, but was normal in the cervical spine and right shoulder. (Tr. 211.) She could flex her lumbar spine to 50 degrees and could flex laterally to 15 degrees on the right and 20 degrees on the left. (Tr. 211.)

**B.     Procedural History**

Plaintiff filed a claim for disability benefits on July 24, 2006. (Tr. 64.) She alleged disability since January 1, 2004 due to diabetes, glaucoma, high cholesterol and a back problem. (Tr. 89.) This claim was denied initially and upon reconsideration, and a request for hearing was filed on May 15, 2007. (Tr. 13.) On June 11, 2007 Plaintiff filed an updated disability report complaining of a concussion, herniated discs, meniscal tear, muscle spasms, lumbar radiculopathy, and depression. (Tr. 122-128.) A hearing was held before Administrative Law Judge ("ALJ") Richard West on December 9, 2008. (Tr. 13.) Plaintiff, represented by counsel, testified at the hearing. (Tr. 27-63.) ALJ West denied benefits on January 6, 2009. (Tr. 10-23.) Plaintiff filed a request for review of ALJ West's decision. (Tr. 6-9.) The Appeals Council denied the request for review on April 16, 2009. (Tr. 3-5.) Plaintiff subsequently filed an appeal to this Court.

**C.     The Disability Standard And The Decision Of The ALJ**

     1.     <u>The Statutory Standard For A Finding Of Disability</u>

An individual is considered disabled under the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual will be deemed disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant meets this definition of disability, the Commissioner applies the following sequential analysis prescribed by Social Security regulations, 20 C.F.R. § 416.920(a):

Step One: Substantial Gainful Activity. The Commissioner first considers whether the claimant is presently employed, and whether that employment is substantial gainful activity.[1]  If the claimant is currently engaged in substantial gainful activity, the claimant will be found not disabled without consideration of her medical condition. 20 C.F.R. § 416.920(b).

Step Two: Severe Impairment. If the claimant is not engaged in substantial gainful activity, she must then demonstrate that she suffers from a severe impairment or combination of

---

[1] "Substantial" work involves significant physical and mental activities. "Gainful" work is performed for pay or profit. 20 C.F.R. § 416.972.

impairments considered severe. A "severe impairment" is one "which significantly limits [the claimant's] physical or mental capacity to perform basic work activities." If the claimant does not demonstrate a severe impairment, she will be found not disabled. 20 C.F.R. § 416.920(c).

Step Three: Listed Impairment. If the claimant demonstrates a severe impairment, the Commissioner will then determine whether the impairment meets or equals an impairment listed on the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant has such an impairment, she is found disabled. If not, the Commissioner proceeds to the fourth step. 20 C.F.R. § 416.920(d).

Step Four: Residual Functional Capacity. At Step Four, the Commissioner determines whether, despite her impairment, the claimant retains the RFC[2] to perform her past relevant work. If so, the claimant is found not disabled and the inquiry proceeds no further. If not, the Commissioner proceeds to the fifth step. 20 C.F.R. § 416.920(e)-(f).

Step Five: Other Work. If the claimant is unable to perform her past work, the Commissioner considers the individual's RFC, age, education, and past work experience to determine if she is able to make an adjustment to other work. If she cannot do so, the claimant is found disabled. 20 C.F.R. § 416.920(g).

This five-step analysis involves shifting burdens of proof. Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of persuasion through the first four steps. Bowen v. Yuckert, 482 U.S. 137, 146 (1987). If the analysis reaches

---

[2] RFC designates the claimant's ability to work on a sustained basis despite her physical or mental limitations. The RFC determination is not a decision as to whether a claimant is disabled, but is used as the basis for determining the particular types of work a claimant may be able to perform despite her impairment(s). See 20 C.F.R. § 416.945.

the fifth step, however, the Commissioner bears the burden of proving that the claimant is able to perform other work available in the national economy.  Id.

  2. The ALJ's Decision

Applying this five-step analysis, and upon review of the entire record, the ALJ first found that Plaintiff had not engaged in any substantial gainful activity since July 24, 2006, the application date. (Finding 1, Tr. 15.)  At Step Two, the ALJ determined that Plaintiff suffers from a combination of physical impairments considered severe, namely lumbar radiculopathy, disc herniation, diabetes mellitus, glaucoma, post status left knee meniscal tear, concussion, and obesity. (Finding 2, Tr. 15.)  But at Step Three, the ALJ found that her condition did not meet or equal an impairment or combination of impairments listed in Appendix 1 of the Social Security regulations.  (Finding 3, Tr. 15.)  The ALJ specifically considered listings 1.00 (Musculoskeletal System-Adult) and 9.00 (Endocrine System-Adult).  (Tr. 15.)  The ALJ explained that despite Plaintiff's impairments, no acceptable medical finding documented listing-level severity.  Id.

At Step Four, the ALJ determined that Plaintiff retained the RFC to lift ten pounds occasionally and frequently; stand and/or walk no more that three hours in a normal eight-hour workday; perform postural functions occasionally; perform only simple and repetitive tasks; and see with limited vision that requires her to work in a well lit environment and to look at objects at a distance of no further than fifteen feet.  (Finding 4, Tr. 16.)  The ALJ then found that Plaintiff has no past relevant work. (Finding 5, Tr.  21.)

At Step Five, the ALJ relied on testimony given by a vocational expert to find that, given Plaintiff's age, education, and RFC, there are approximately 1,300 jobs in the regional economy and 36,000 jobs in the national economy that Plaintiff can perform.  (Finding 9, Tr. 21.)

9

Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act, and, consequently, denied her application for benefits. (Finding 10, Tr. 22.)

## II.  DISCUSSION

### A.  Standard Of Review

This Court reviews the decision of the Commissioner to determine whether there is substantial evidence in the administrative record supporting his decision. 42 U.S.C. § 405(g); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 426 (3d Cir. 1999) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record. Simmonds v. Hecker, 807 F.2d 54, 58 (3d Cir. 1986).

### B.  Review Of The Commissioner's Decision

Plaintiff challenges the decision of the Commissioner on the grounds that: (1) the ALJ failed to discuss evidence in support of the determination that Plaintiff's impairments did not meet or medically equal the Listings (Pl. Br. 25-32); (2) the ALJ's credibility assessment of Plaintiff's testimony and her daughter's testimony was not supported by substantial evidence (Pl. Br. 37-39); (3) the ALJ's RFC determination was not supported by substantial evidence (Pl. Br. 34-37); and (4) the ALJ failed to include medically undisputed impairments in the hypothetical question posed to the vocational expert at Step Five (Pl. Br. 32-34, 37). The Court will address each argument in turn.

1. The Listings

The ALJ found at Step Three that Plaintiff's condition did not meet or equal an impairment or combination of impairments listed in Appendix 1 of the Social Security regulations. (Finding 3, Tr. 15.)   Plaintiff contends that, at Step Three, the ALJ did not "set forth the reasons for his decision" as required by Burnett v. Commissioner of Social Security, 220 F.3d 112, 119 (3d Cir. 2000).  But, as the Third Circuit explained, "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004); see also Hernandez v. Comm'r of Soc. Sec., 198 F. App'x 230, 235 (3d Cir. 2006) (finding that a full discussion of evidence in later sections of the ALJ's opinion satisfied the Burnett requirement at Step Three).

The ALJ noted that he gave specific consideration to Listings §§ 1.00 (Musculoskeletal System-Adult) and 9.00 (Endocrine System-Adult). Id.  He also considered obesity as an added factor when evaluating Plaintiff's impairments.  Id.  Plaintiff had the burden to prove that her impairments met the severity of the listings.  Burnett, 220 F.3d at 118.  The ALJ concluded that Plaintiff had not come forward, as she must, with medically acceptable evidence of a listed impairment.  (Tr. 15.)

Plaintiff argues that her knee injury met the severity of listing 1.02(A) (Major dysfunction of a joint).  (Pl. Br. 27.)  Listing 1.02(A) provides that a plaintiff must show, in a joint such as a knee, a "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion..., and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or

11

ankylosis...resulting in an inability to ambulate effectively."[3]  Plaintiff also argues that her back injury met the severity of Listing 1.04 (Disorders of the spine).  (Pl. Br. 26-27.)  Listing 1.04 provides that a plaintiff must show a spinal disorder that results in compromise of a nerve root or the spinal cord, accompanied either by nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis.

With respect to the Plaintiff's knee injury, an MRI taken of Plaintiff's left knee revealed a meniscal tear and mild joint space narrowing, but showed no sign of fracture, subluxation or other gross anatomical deformity.  (Tr. 18, 217.)  Further, Plaintiff demonstrated her ability to ambulate without assistance during physical examination.  (Tr. 18, 138.)  For these reasons, substantial evidence supports the ALJ's determination that Plaintiff's knee injury did not meet Listing 1.02(A).  With respect to Plaintiff's back injury, the ALJ noted that the results of an MRI revealed mild lower-lumbar disc degeneration with minimal herniations.  (Tr. 18.)  The radiology report showed that the herniations abutted the nerve root, but Plaintiff did not present evidence indicating that either the nerve root or spinal cord were compromised.  (Tr. 215.)  Substantial evidence supports the ALJ's conclusion that Plaintiff's back condition did not meet the requirements of Listing 1.04.

Although the ALJ's discussion at Step Three was concise, in combination with the medical findings discussed elsewhere in the opinion it was sufficient to meet the Burnett

---

[3] Listing 1.00 defines the inability to ambulate effectively as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."

requirement.

### 2. Credibility Assesment

Plaintiff argues that the ALJ did not comply with 20 C.F.R. § 416.929(c)(1), which states that the Commissioner will consider all of the evidence presented, including statements from Plaintiff and other persons about the effects of Plaintiff's symptoms. (Pl. Br. 38-39.) Specifically, Plaintiff argues that the ALJ disregarded her testimony and the testimony of her daughter, Necma Hamdi[4], after an improper credibility assessment in which the ALJ made a medical judgment contrary to medical evidence. (Pl. Br. 38-39.)

This contention is not supported by the record. The ALJ must give Plaintiff's complaints of pain serious consideration. Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981). But the ALJ need not credit complaints of pain that are not supported by the record. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929(b); Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992). In evaluating a plaintiff's subjective complaints of pain, the ALJ may consider objective medical evidence along with a plaintiff's daily activities. See 20 C.F.R. § 416.929(c)(2)-(3).

The ALJ found that the Plaintiff's assertions of pain were reasonable to a degree, but found very little objective medical evidence to support the extent of her complaints. (Tr. 19-21.) Plaintiff complained that due to her condition, lifting, squatting, bending, standing for long periods, reaching, and walking were all "extremely painful and almost non-existent." (Tr. 126.) But the consultative examiner, Dr. Saltas, indicated that her range of motion, hand grip, gait, and power in all extremities were within normal limits. (Tr. 138.) Although he indicated Plaintiff suffered from tingling and decreased sensation in the left leg and facet arthropathy in the lumbar

---

[4] Ms. Hamdi's testimony was largely duplicative of Plaintiff's own testimony.

spine, Dr. Saltas found the examination to be otherwise "completely unremarkable." (Tr. 138.) After another physical examination, Dr. Klingbeil determined that despite Plaintiff's complaints of pain and immobility, her strength in the lower and upper extremities measured at five out of five, sensation was intact, and her range of motion was diminished only mildly in the lumbar region. (Tr. 211.) MRI and X-ray imaging of the lumbar spine show only minimal disc herniations (Tr. 215-16) and mild facet arthropathy. (Tr. 139.) Substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints of debilitating pain were not entirely consistent with the objective medical evidence.

      The ALJ also found that Plaintiff's complaints of pain also conflict with her own reports and testimony regarding her daily activities. (Tr. 18.) In her application for disability benefits, Plaintiff specified that she typically dedicated five hours every other day to house work, including cooking and cleaning. (Tr. 100.) Her other reported activities included reading, talking on the phone, watching television, grocery shopping, looking after her children, and weekly trips to her mosque and the park. (Tr. 99-102.) Substantial evidence supports the ALJ's determination that these activities indicated that she was capable of a greater range of physical activity on a daily basis than she alleged.

      Plaintiff also contends that the ALJ disregarded medical opinion that supported her subjective complaints of pain. (Pl. Br. 37.) For instance, Dr. Al-Salihi opined that Plaintiff was disabled due to lumbosacral vertebral disc disease, poorly controlled diabetes, glaucoma and arthritis in her knee. (Tr. 135.) Dr. Elamir and Dr. Lala also reported that Plaintiff had severe exertional limitations due to her condition. (Tr. 159-162, 182-186.) The ALJ concluded that the objective medical evidence did not support these findings. (Tr. 20-21.) While a treating

physician's opinions are generally given great weight, they are not controlling if contradicted by other medical evidence. See 20 C.F.R. § 416.927(d)(2); Mondragon v. Apfel, 195 Fed. App'x 912, 915-16 (10th Cir. 2001). As discussed above, objective medical evidence indicates that the herniations in Plaintiff's back were minimal (Tr. 215), range of motion, strength, and sensation were essentially normal in all extremities (Tr. 211), and vision was normal with corrective lenses. (Tr. 207.) MRI revealed no evidence of arthritis in Plaintiff's knee. (Tr. 217.) Consequently, the ALJ did not err by limiting the weight given to the conclusions of Dr. Al-Salihi, Dr. Elamir, and Dr. Lala that were not supported by the medical evidence.

### 3. RFC Determination

At Step Four, the ALJ determined that Plaintiff had the RFC to perform sedentary work.[6] (Finding 4, Tr. 16.) Plaintiff argues that this determination is not supported by substantial evidence in the record. (Pl. Br. 32.) Specifically, Plaintiff contends that the ALJ failed to make an individual assessment of each of the claimant's abilities and limitations as required by Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994). (Pl. Br. 32.) Plaintiff also contends that the ALJ failed to consider the combined effect of her impairments and medications when determining RFC. (Pl. Br. 37.)

The ALJ determined that Plaintiff retained the RFC to lift ten pounds occasionally and frequently; stand and/or walk no more that three hours in a normal eight-hour workday; perform postural functions occasionally; perform only simple and repetitive tasks; and see with limited vision that requires her to work in a well lit environment and to look at objects at a distance of no

---

[6] Sedentary work is defined as being able to lift and carry up to 10 pounds occasionally and 5 pounds frequently; stand/walk up to 2 hours in an 8-hour day; and sit up to 6 hours in an 8-hour day. 20 C.F.R. § 404.1567.

further than fifteen feet. (Finding 4, Tr. 16.) In light of the medical evidence discussed elsewhere in this opinion, this conclusion is supported by substantial evidence. The ALJ discussed each of Plaintiff's limitations and activities individually and in combination over five pages of his opinion (Tr. 16-21.)[7], and none of Plaintiff's limitations conflict with the ALJ's RFC determination. Moreover, Plaintiff's brief does not identify any particular combination of impairments that should have led the ALJ to impose additional limitations on Plaintiff's RFC.

    4. Hypothetical Questions Posed to the Vocational Expert

At Step Five, the ALJ determined that jobs existed in significant numbers in the regional and national economies that Plaintiff could perform. (Finding 9, Tr. 21.) Plaintiff argues that the ALJ failed to include medically established impairments in the hypothetical question posed to the vocational expert (Pl. Br. 36), but she does not specify which impairments were omitted. A vocational expert must be provided with all of the claimant's medically established impairments in order for the Commissioner to sufficiently meet his burden, but he need not be provided with every *alleged* impairment. See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). The ALJ may fulfill this requirement by accurately conveying all of claimant's credibly established limitations. Id.

In evaluating Plaintiff's RFC at Step Four, the ALJ had considered Plaintiff's back injury, shoulder injury, meniscal tear, diabetes, and glaucoma. (Tr. 20.) Considering only these established impairments and supporting medical evidence, the ALJ determined that Plaintiff

---

    [7] For example, the ALJ noted that radiological imaging revealed mild disc degeneration and minimal herniations in the lumbar spine and a meniscal tear in the left knee; that physical examination showed normal range of motion, power and sensation in Plaintiff's extremities; that despite pain in her shoulder there was no swelling or erythema; and that vision was normal with corrective lenses. (Tr. 18.)

could work at a sedentary level and was capable of lifting ten pounds occasionally and frequently; standing and/or walking no more that three hours in a normal eight-hour workday; performing postural functions occasionally; performing only simple and repetitive tasks; and seeing with limited vision. (Finding 4, Tr. 16.) As noted above, this determination is supported by substantial evidence.

The ALJ then used the precise language from Plaintiff's RFC when phrasing his hypothetical question to the vocational expert.[8] The expert determined that there were approximately 1,300 jobs available locally and 36,000 jobs available nationally for an individual with this RFC. (Tr. 62.) The expert specified that these jobs required only simple, repetitive tasks done at an essentially sedentary level. Id. Given that the ALJ's question accurately conveyed all of Plaintiff's credibly established limitations, it satisfied the Rutherford requirement.

### III.  CONCLUSION & ORDER

For the reasons set forth above, and after careful review of the record in its entirety, it is **ORDERED** that the decision of the ALJ is **AFFIRMED**, and it is **ORDERED** that this case is **CLOSED**.

/s/ **Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.

---

[8] The ALJ asked whether jobs exist in substantial numbers for an individual who "can lift only ten pounds occasionally, ten pounds frequently, no more than three hours standing or walking in an eight-hour workday. Postural limitations are too occasional. Vision is limited to not being able to work in unlit area and not being required to see more than 15 feet. And is further limited to performance of only simple, repetitive tasks." (Tr. 62.)